IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAVON D. BROWN, | ) | Civil Action No. 7:12-cv-00288 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MOBASHAR, *et al.*, | ) | By:  Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Javon D. Brown ("Brown"), a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution by denying him adequate medical treatment. Defendant Dr. Nasseer Mobashar ("Dr. Mobashar") has filed a motion to dismiss, Defendant Fred Schilling ("Schilling") has filed a motion for summary judgment, and Brown has filed responses to both motions, making this matter ripe for disposition. Brown has also submitted a motion for a preliminary injunction. I conclude that Dr. Mobashar's motion to dismiss should be denied, Schilling's motion for summary judgment should be granted, and Brown's motion for a preliminary injunction should be denied.

I.

Brown alleges that defendants violated the Eighth and Fourteenth Amendments by denying him adequate medical treatment for a growth on his head. Brown states that he has a large, painful growth on the back of his head, which he claims defendants have refused to treat. Dr. Mobashar is the physician at Buckingham Correctional Center ("Buckingham"), where Brown is incarcerated, and Schilling is the Director of Health Services for the Virginia

Department of Corrections ("VDOC"). Brown claims that he sought medical treatment for the removal or testing of the growth on multiple occasions between February 2010 and April 2011, complaining of significant pain.[1] Brown alleges that when he saw Dr. Mobashar on February 18, 2010, Dr. Mobashar concluded that the growth had increased in size and, without obtaining Brown's consent or determining the medical nature of the growth, Dr. Mobashar inserted a syringe and unsuccessfully attempted to extract fluid. Brown claims this procedure increased his pain and caused the growth to enlarge.[2] Over the course of the following year, Brown repeatedly asked Dr. Mobashar for medical treatment of the growth. Brown alleges that when he sought treatment on April 8, 2011, Dr. Mobashar stated "There is nothing that I can do for you, I understand that you're in pain, but due to our budget restrictions the surgery that you require is not going to happen. The only thing that I can do for you is to continue to monitor you, sorry." Brown also claims that Schilling was directly involved in his medical treatment because Schilling signed a grievance form submitted by Brown, determining that Brown's grievance requesting to be seen by a specialist was unfounded.

II.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*,

---

[1] Brown claims he sought treatment on February 10, 2010, February 18, 2010, May 13, 2010, June 16, 2010, July 12, 2010, August 17, 2010, September 14, 2010, December 28, 2010 and April 8, 2011.

[2] In considering a § 1983 claim, a court must apply the state's general or residual statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 250 (1989). In Virginia, the applicable statute of limitations is two years. Va. Code § 8.01-243(A); *Billups v. Carter,* 604 S.E.2d 414, 419 (Va. 2004). Brown filed this action on June 29, 2012; thus, any claims arising out of actions taken prior to June 29, 2010 are time-barred, including Dr. Mobashar's use of a syringe to attempt to extract fluid from Brown's head on February 18, 2010.

904 F. Supp. 487, 492 (E.D. Va. 1995). To establish deliberate indifference, a plaintiff must present facts to demonstrate that the defendant had actual knowledge of and disregard for an objectively serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). Questions of medical judgment are not subject to judicial review. *Russell*, 528 F.2d at 319 (citing *Shields v. Kunkel*, 442 F.2d 409 (9th Cir. 1971)). A delay in receiving medical care, with no resulting injury, does not violate the Eighth Amendment. *See Strickler v. Waters*, 989 F.2d 1375, 1380–81 (4th Cir. 19993); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Wynn v. Mundo*, 367 F. Supp. 2d 832, 838 (M.D.N.C. 2004).

III.

A.

Dr. Mobashar argues that Brown's complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the

3

plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950–51 (2009). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). In sum, Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe pro se pleadings liberally. *See, e.g.*, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (citation omitted). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (quoting *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978)). Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F.

4

Supp. 2d 416, 421 (E.D. Va. 1999) (quoting *Sado v. Leland Memorial Hospital*, 933 F. Supp. 490, 493 (D. Md. 1996)).

B.

Dr. Mobashar contends that the complaint does not adequately allege that he was deliberately indifferent to a serious medical need, but instead merely demonstrates Brown's disagreement with his course of treatment. Brown previously filed a § 1983 claim regarding the same medical condition and treatment that serve as the basis for this lawsuit. I *sua sponte* dismissed the previous lawsuit without prejudice, finding that Brown failed to state a constitutional claim. *See Brown v. Mobashar,* No. 7:12-cv-00202, 2012 WL 2192170 (W.D. Va. June 14, 2012). Dr. Mobashar argues that Brown's amended complaint in this case does not correct any of the deficiencies that existed in the earlier case.[3]

I conclude that Brown has alleged facts sufficient to state a claim for deliberate indifference to his serious medical needs, under the standard set forth in *Estelle v. Gamble*. I dismissed Brown's first suit because the allegations in that case simply amounted to disagreement with Dr. Mobashar's medical judgment, which cannot serve as the foundation for a § 1983 claim. *See Wright*, 766 F.2d at 849. In this suit, however, Brown does not simply allege that he desired treatment that Dr. Mobashar did not, in the exercise of his medical judgment, believe was required. Rather, Brown specifically alleged in his amended complaint that Dr.

---

[3] Dr. Mobashar also argues that this Court should invoke the doctrine of judicial estoppel to dismiss Brown's complaint. "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *John S. Clark Co. v. Faggert & Frieden*, 65 F.3d 26, 28–29 (4th Cir. 1995) (quotation omitted). Nothing in the record warrants the invocation of the judicial estoppel doctrine in this case. Brown has not taken a position inconsistent with his earlier position, and there is no evidence that he has intentionally misled or played "fast and loose" with the courts. While I dismissed Brown's previous lawsuit, I did so without prejudice, and it was therefore perfectly acceptable for Brown to file a new complaint in which he alleged facts that address the deficiencies in his previous complaint.

5

Mobashar told him on April 8, 2011: "There is nothing that I can do for you, I understand that you are in pain, but due to our budget restrictions, *the surgery that you require* is not going to happen." (Emphasis added). Assuming the truth of Brown's allegations and drawing reasonable inferences in his favor, as I must when considering a motion to dismiss, this statement suggests that Dr. Mobashar knew of Brown's medical problem, believed that surgery was required, declined to provide the necessary treatment or even to request it, and did so not because of medical reasons, but because of budgetary ones.[4] Dr. Mobashar suggests that Brown's allegations regarding "budget restrictions" is simply a "gloss" on a QMC decision not to approve Dr. Mobashar's request for a general surgical consult. But Dr. Mobashar has not provided any information regarding the QMC decision, which appears to have been made before Brown's appointment with Dr. Mobashar on April 8, 2011.[5] Nor has Dr. Mobashar offered any evidence to refute the allegation that he told Brown surgery was required.[6]

C.

Dr. Mobashar also argues that he is entitled to qualified immunity from being sued in his personal capacity and to absolute immunity from being sued in his official capacity. Under the doctrine of qualified immunity, "government officials performing discretionary functions

---

[4] Dr. Mobashar points to *Thomas v. Schilling*, No. 7:10cv00090, 2010 WL 4630297 (W.D. Va. Nov. 8, 2010), to support his contention that he did not participate directly in the alleged violation of Brown's constitutional right. In *Thomas*, however, the record contained information that showed the medical criteria under which the plaintiff's request for treatment was considered and denied. *Id.* at *1. Although the plaintiff in *Thomas* alleged that budget constraints motivated the treatment decision, he did not argue that the relevant medical criteria had been misapplied in his case. *Id.* at *2. By contrast, the record in this case contains no evidence of any medical criteria considered by either Dr. Mobashar or the QMC.

[5] QMC stands for "Quality Medical Care" and is the system that doctors utilize within the VDOC system to request approval for offsite care of inmates.

[6] In the brief accompanying his motion to dismiss, Dr. Mobashar stated that "[n]o physician diagnosed plaintiff as requiring any treatment he did not have, and, in particular, during the time of plaintiff's allegations, no physician diagnosed plaintiff as needing surgery," but he provides no support for this claim. At most, it simply shows that there exists factual dispute, which should not be resolved by a court considering a motion to dismiss. *See Martin*, 980 F.2d at 952.

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In addressing qualified immunity, the Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). I have already found that Brown has adequately alleged a violation of his Eighth Amendment rights—specifically, that prison officials were deliberately indifferent to his serious medical need. I also find that this right is clearly established since the Supreme Court recognized it in *Estelle v. Gamble* more than thirty-five years ago. Accordingly, I conclude that Dr. Mobashar is not entitled to qualified immunity.

As for absolute immunity, the Supreme Court held in *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), that the Eleventh Amendment bars § 1983 suits for damages against state officials acting in their official capacities. Thus, any claim for damages against Dr. Mobashar acting in his official capacity is barred by the Eleventh Amendment. As Brown points out, however, state officials acting in their official capacities can be sued for prospective injunctive relief to comply with the federal Constitution. *See Ex parte Young*, 209 U.S. 123 (1908). Brown has requested that this Court issue an injunction ordering Dr. Mobashar to provide surgery to remove the tumor on Brown's head, but Dr. Mobashar claims that he lacks the authority to do so. Dr. Mobashar's argument is unavailing. As I have already discussed, the timeline of events alleged in the amended complaint indicates that the QMC decision was made

7

before Dr. Mobashar told Brown that he required surgery. If Dr. Mobashar does in fact believe that Brown requires surgery, at the very least he should convey that information to the QMC and request the surgery if he is not able to perform it himself. Moreover, it appears that Dr. Mobashar has a professional obligation to provide necessary treatment. In an affidavit in which he describes the referral process for prisoners in need of medical care, Schilling, the VDOC Director of Health Services, stated that the "facility doctor evaluates the patient and makes the final decision regarding treatment and tests based on his knowledge and assessment of the patient." While the facility physician must refer requests for outside services to the Office of Health Services, Shilling stated, "[u]ltimately the care is the responsibility of the local physician who has the authority to order the outside services, *even if the consult physician and the Chief Physician do not agree*." (Emphasis added.) Accordingly, I will deny Dr. Mobashar's motion to dismiss.

IV.

In support of his motion for summary judgment, Schilling argues that, as an administrator, he does not make medical decisions about offenders' medical treatment, including determining whether an offender is referred to a specialist for evaluation. Instead, medical judgments at Buckingham "always rest with the qualified medical personnel who are trained to make medical decisions regarding the care and treatment of inmate patients," and Schilling does not intervene in those decisions. While Schilling did sign a response to Brown's grievance regarding his request for an outside referral for surgical removal of his growth, the response was not based on Schilling's own judgment, but rather based on the recommendation of a qualified

8

medical professional. I find that Schilling has demonstrated in his motion for summary judgment that he was not deliberately indifferent to a serious medical need. Accordingly, I will grant Schilling's motion for summary judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment for the defendant is appropriate when there exist no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. For a denial of medical care to state a claim under § 1983, it must amount to "deliberate indifference to the prisoner's serious medical needs, "rising to the level of "unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1979). To establish personal liability against a defendant in a § 1983 action, the defendant must be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Brown does not allege that Schilling was personally involved with Brown's medical care. Instead, Brown alleges that Schilling, as VDOC's Director of Health Services, is responsible for "monitoring the overall quality of health care services . . . provided to prisoners." When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom for which he is responsible, *see Fisher v. Washington Metropolitan Area Transit Authority*, 690 F.2d 1133 (4th Cir. 1982), or if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit

9

authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." *Id.* "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* Brown makes no allegations in his amended complaint that support imposing supervisory liability against Schilling, or that indicate that Schilling was personally involved in any decisions regarding Brown's medical care. In his response to Schilling's motion for summary judgment, Brown states that Schilling makes decisions about offenders medical treatment because when an offender files a medical complaint Schilling "authenticates the response of who receives medical care and who does not receive medical care." Brown submitted to the court a grievance he had filed requesting to be seen by a specialist to surgically remove the growth. This grievance was determined to be unfounded and signed by Schilling. However, to the extent that Brown asserts that Schilling was deliberately indifferent to his needs by denying his administrative grievance, that claim is without merit because that is not the type of personal involvement required to state a claim. *See Paige v. Kupec*, Case No. AW-02-3430, 2003 U.S. Dist. LEXIS 27472 (D. Md. Mar. 31, 2003). Furthermore, the Fourth Circuit has held that non-medical personal may rely on the opinion of medical staff regarding the proper treatment of inmates. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). Thus, Schilling could properly rely on the decisions made by Dr. Mobashar

10

with respect to the Brown's care.  Consequently, I find that Brown has failed to state a claim against Schilling, and Schilling's motion for summary judgment shall be granted.

V.

Brown has also submitted a motion for a preliminary injunction requesting that this Court order Defendants to surgically remove the growth on Brown's head.  As a preliminary injunction temporarily affords an extraordinary remedy prior to trial, the party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tip in his favor, and (4) an injunction is in the public interest.  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  A showing of a "strong possibility of harm is insufficient because the standard requires a showing that harm is "likely."  *Id.* at 22.  Each of these four factors must be satisfied before interlocutory injunctive relief is warranted.  *See Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).

I find that Brown has failed to show that he is likely to suffer irreparable harm in the absence of a preliminary injunction.  Brown claims that the irreparable harm he will suffer includes cancer, seizures, loss of vision, coma with herniation of the brain, and death.  However, these claims are pure speculation; Brown has not provided any evidence that he has suffered from any of these problems or that he will suffer from them if the growth on his head is not removed immediately.  I therefore conclude that Brown has failed to satisfy all four elements of the *Winter* test, and I will deny Brown's motion for a preliminary injunction.

VI.

For the foregoing reasons stated, I will deny Dr. Mobashar's motion to dismiss, grant Schilling's motion for summary judgment, and deny Brown's motion for a preliminary injunction.

The Clerk of the Court is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

**ENTER**:  This 31st day of May, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE